**ORIGINAL**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _08-cv-02612-BNB_
(To be supplied by the court)

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAR -2 2009

**GREGORY C. LANGHAM**
CLERK

**JURY TRIAL DEMANDED**

JAMES K. CONKLETON                                    , Plaintiff,

v.

ARISTEDES W. ZAVARAS, in his official capacity as Executive Director
of the Colorado Dept. of Corrections, ("CDOC")
,

JOE STOMMEL, in his official capacity as the Program Administrator of
the Sex Offender Treatment and Monitoring Program,("SOTMP") for the CDOC,

JOHN P. McGILL, in his individual and official capacities as a Treatment
Provider for the SOTMP,
,

BONNIE CANTU, in her individual and official capacities as a Treatment
Provider for the SOTMP,
,

JAMES LANDER, in his individual and official capacities as a Treatment
Provider for the SOTMP,
,

ED MURO, in his individual and official capacities as a Correctional Officer
I for the CDOC,
,

RICHARD DeGROOT, in his individual and official capacities as a Case
Manager for the CDOC,
,

CATHIE HOLST, in her official capacity as Manager of the Office of
Correctional Legal Services for the CDOC, , Defendant(s).

(List each named defendant on a separate line.)

---

## *AMENDED*
## PRISONER COMPLAINT

---

(Rev. 1/30/07)

Defendants continued

THOMAS MISEL, in his individual and official capacities as a Case Manager
for the CDOC,

AL ESTEP, in his official capacity as Warden for the CDOC's Fremont Corr.
Facility,

RICHARD LIND, in his individual and official capacity as a Correctional
Officer V.

## A. PARTIES

1. JAMES K. CONKLETON , CDOC# 108986
   (Plaintiff's name, prisoner identification number, and complete mailing address)
   P.O.B. 6000, Sterling Corr. Facility, Sterling, CO  80751-0600

2. ARISTEDES W. ZAVARAS, Executive Director of the CDOC
   (Name, title, and address of first defendant)

   2862 S. Circle Dr, Ste 148, Colorado Springs, CO  80906-4195

   At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? XX Yes ___ No (CHECK ONE).  Briefly explain your answer:
   Defendant Zavaras was and is responsible for developing policies and procedures governing the operation of the CDOC and the SOTMP and was personally responsible for issuing executive directives, and authorizing the SOTMP policies at issue in this action. He is sued in his official capacity.

3. JOE STOMMEL, Program Administrator of the CDOC's SOTMP
   (Name, title, and address of second defendant)

   Arrowhead Corr. Center, P.O.B. 300 Canon City, CO  81215-0300

   At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? XX Yes ___ No (CHECK ONE).  Briefly explain your answer:

   Defendant Stommel was the SOTMP Administrator for the CDOC and was responsible for developing the procedures for reentry to sex offender treatment without the benefit of due process. He is sued in his official capacity.

4. JOHN P. McGILL,  Treatment Provider for the SOTMP
   (Name, title, and address of third defendant)

   Fremont Corr. Facility, P.O.B 999. Canon City, CO 81215-0300

   At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? XXX Yes ___ No (CHECK ONE).  Briefly explain your answer:
   Defendant McGill was a Treatment Provider for the SOTMP at the time he recommended and supported the denial of reentry to treatment, and the denial of prescribed mental health treatment for Plaintiff. He is sued in his individual and official capacities.

(If you are suing more than three defendants, use extra paper to provide the information requested above for each additional defendant. The information about additional defendants should be labeled "A. PARTIES.")

## A. PARTIES

5.   BONNIE CANTU, Treatment Provider for the SOTMP

   Fremont Correctional Facility, P.O.B. 999, Canon City, CO  81215-0999

   Defendant Cantu was acting under color of state law when she chose to refuse Plaintiff reentry mandatory sex offender treatment. She is sued in her individual and official capacity.

6.   JAMES LANDER, Treatment Provider for the SOTMP

   Fremont Corr. Facility, P.O.B. 999, Canon City, CO  81215-0999

   Defendant Lander was acting under color of state law when he chose to deny Plaintiff administrative relief, and answered for the FCF Warden denying Plaintiff reentry to treatment. He is sued in his individual and official capacity.

7.   ED MURO, Correctional Officer I, for the CDOC

   Fremont Correctional Facility, P.O.B. 999, Canon City, CO  81215-0999

   Defendant Muro was acting under color of state law when he had Plaintiff placed into segregation for assisting others with the CDOC grievance system. He is sued in his individual and official capacity.

8.   RICHARD DeGROOT,  Case Manager for the CDOC

   Fremont Correctional Facility, P.O.B. 999, Canon City, CO  81215-0999

   Defendant DeGroot was acting under the color of state law when he had Plaintiff transfered to a higher classified prison in retaliation for Plaintiff filing a grievance against prison staff. He is sued in his individual and official capacity.

9.   CATHIE HOLST, CDOC Manager of Correctional Legal Services

   2862 S. Circle Dr, Ste 148, Colorado Springs, CO  80906-4195

   Defendant Holst acted under color of state law when she emplemented the rules and policies which denied Plaintiff ability to petition for certiorari. She is sued in her official capacity.

## A. PARTIES

10. THOMAS MISEL, Case Manager for the CDOC

Fremont Correctional Facility, P.O.B. 999, Canon City, CO  81215-0999

Defendant Misel was acting under color of state law when he chose to approve the transfer of Plaintiff to a harsher prison in retaliation for filing a grievance against prison staff. He is sued in his individual and official capacity.

11. AL ESTEP, Warden for Fremont Correctional Facility

Fremont Correctional Facility, P.O.B. 999, Canon City, CO  81215-0999

Defendant Estep was acting under the color of state law when he chose to emplement a rule that resulted in Plaintiff being involuntarily exposed to female staff frequently while using the toilet. He is sued in his official capacity.

12. RICHARD LIND, Correctional Officer V for CDOC

Limon Correctional Facility, 49030 State Hwy. 71, Limon, CO  80826

Defendant Lind was acting under color of state law when he chose to have Plaintiff moved to a more hazardous part of the prison. He knew that Plaintiff was subject to an increased risk of harm due to the nature of his conviction. He is sued in his individual and official capacity.

## B. JURISDICTION

1.  I assert jurisdiction over my civil rights claim(s) pursuant to:  (check one if applicable)

    <u>XX</u>   28 U.S.C. § 1343 and 42 U.S.C. § 1983 (state prisoners)

    ____   28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (federal prisoners)

2.  I assert jurisdiction pursuant to the following additional or alternative statutes (if any):

    _____

    _____

## C. NATURE OF THE CASE

**BRIEFLY** state the background of your case.  If more space is needed to describe the nature of the case, use extra paper to complete this section.  The additional allegations regarding the nature of the case should be labeled "C. NATURE OF THE CASE."

This is a civil rights action filed by James K. Conkleton, a Colorado state prisoner for damages, declaratory, and injunctive relief under 42 U.S.C.§1983, alleging that prison officials are; denying him access to mandatory sex offender treatment, subjecting him to frequent involuntary exposure, retaliatory acts, and transfers, reasonable access to the courts, and failed to protect him from an obvious risk of assault, in violation of the Fourteenth, Fourth, First, and Eighth Amendments to the U.S. Constitution.

(Rev. 1/30/07)                           3

## D. CAUSE OF ACTION

State concisely every claim that you wish to assert in this action.  For each claim, specify the right that allegedly has been violated and state all supporting facts that you consider important, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim.  You do not need to cite specific cases to support your claim(s).  If additional space is needed to describe any claim or to assert more than three claims, use extra paper to continue that claim or to assert the additional claim(s).  The additional pages regarding the cause of action should be labeled "D. CAUSE OF ACTION."

1.  Claim One: **VIOLATION OF FOURTEENTH AMENDMENT: DENIAL OF REENTRY TO MANDATORY TREATMENT**

Supporting Facts:

NATURE AND TERMS OF PLAINTIFF'S INCARCERATION

1.  Plaintiff pled guilty to a sex offense, as such offense is defined in Colo.Rev. Stat.§§18-2-405.3;18-1.3-1004. He was sentenced on March 19, 2001, under Colo.Rev.Stat.§18-1.3-1001, The Sex Offender Lifetime Supervision Act, ("The Act").

2.  Under The Act, Plaintiff was sentenced to an indeterminate term in the CDOC for a minimum of ten years, and a maximum of the remainder of his natural life. As part of his sentence, Plaintiff must participate in sex offender treatment. Colo.Rev.Stat.§18-1.3-1004(3)

3.  In the CDOC, the Sex Offender Treatement and Monitoring Program, ("SOTMP") administers treatment to prisoners by providing psychoeducational and psychotherapeutic services to prisoners convicted of sex offenses.

4.  The SOTMP is operated by the CDOC and, is governed by the CDOC's Administrative Regulation, ("AR"), 700-19. Admin.Reg. 700-19 establishes the general scope and limits of sex offender treatment for prisoners.

(Rev. 1/30/07)                                    4

## D. CAUSE OF ACTION

5.      Defendant Aristedes W. Zavaras, as the Executive Director of the CDOC, is responsible for managing, supervising and controlling the correctional institutions operated by the State of Colorado, as well as for developing policies and procedures governing the operations of the CDOC including the approval and application of the SOTMP.

6.      Defendant Joe Stommel, as Program Administrator of the SOTMP with the CDOC, is responsible for the system-wide clinical functioning of the SOTMP, as well as the development of system-wide procedures regarding sex offender treatment, and the granting of reentry to treatment.

7.      In June, 2003, Plaintiff met all prerequisites for treatment as they are defined in AR 700-19(IV)(F), and entered a Phase I treatment group. In July, 2003, Defendant John P. McGill initiated the process for termination, or did terminate Plaintiff from treatment without advanced notice, or the opportunity to rebut the reasons put forth to justify Plaintiff's termination.


DEFENDANTS DENIAL OF PLAINTIFF'S REENTRY TO TREATMENT

8.      On May 12, 2006, Plaintiff submitted a Phase I reentry screening form to Patricial Vaught of the Centennial Corr. Facility, ("CCF"), mental health department.

9.      In or about September, 2006, Plaintiff was informed by his assigned Case Manager, that he has been approved for transfer to an SOTMP facility, and on October 25, 2006, Plaintiff was transferred from Arkansas Valley Corr. Fac., ("AVCF") to Fremont Corr. Facility, ("FCF").

10.     On November 27, 2006,  Plaintiff was notified by Defendant Bonnie Cantu that he must complete a re-screening form to be eligible for sex offender treatment and to bring the form to a sceduled meeting on November 28, 2006.

## D. CAUSE OF ACTION

11.     On November 28, 2006, Plaintiff met with Defendant Cantu in the FCF Mental Health Department. Cantu inquired about the SOTMP "probation" homework that Plaintiff had been assigned to complete by Defendant McGill as part of the previous termination. Plaintiff informed Cantu that he was not on probation when Defendant McGill terminated him from treatment.

12.     Defendant Cantu acknowledged after looking through Plaintiff's mental health file that there was no probation contract in the file as required by the SOTMP guidelines for probation. Cantu them informed Plaintiff that she would have to consult with Defendant McGill in order to determine whether he would be granted reentry to treatment.

13.     In response to Plaintiff's inquiries, Defendant Cantu stated that Plaintiff was screened on December 8, 2006 for reentry, and did not pass. She further stated that Plaintiff had failed to complete probation homework.

14.     Defendant Cantu did not inform Plaintiff why he did not pass the screening nor did she inform him as to what he must do to pass the screening. She also did not explain why there was no probation contract in the file.

15. To Plaintiff's knowledge, there is no CDOC AR that provides a prisoner with due process when he is being considered for reentry to treatment where he was previously denied due process prior to termination.

16. Denial of reentry to treatment also worked as a denial of Plaintiff's ability to fit into the Sub Code classification of "R", or "Ready for Treatment. AR 700-19(IV)(A)(6)(a)

## D. CAUSE OF ACTION

17.       Even though Plaintiff has never refused to participate in treatment, the denial of treatment will not be reflected as the SOTMP denying him reentry, but as though he is "refusing treatment".

18.       Being designated as refusing treatment makes Plaintiff subject to being transferred to a non-SOTMP facility. Prisoners such as Plaintiff, convicted of a sex offense, are subject to a substantial increase in the risk for physical assault in a non-SOTMP facility by other prisoners.

19.       The designation of refusal of treatment also subjects Plaintiff to the denial of some vocational and educational assignments.

20.       Under Colo.Rev.Stat. §18-1.3-1006(1)(a), sex offender treatment is a prerequisite to release from incarceration to parole. State law mandates the parole board to determine among other things, whether a parole applicant "has successfully progressed in treatment" before granting parole.

21.       The parole board's determination of successful progress through treatment is made from the mandatory recommendation from the CDOC that parole should be granted to a prisoner.

22.       The CDOC's recommendation concerning whether to recommend parole rest solidly upon the prisoners participation and successful progress in the SOTMP treatment. The SOTMP will not advance a recommendation for parole until the prisoner has been in treatment for at least two years, and has made successful progress. This requirement is set out by the Sex Offender Management Board, ("SOMB") Standards and Guidelines for treatment in prison.

23.       Plaintiff has since been subjected to transfer to two different non-SOTMP facilities, and the current facility, Sterling Corr. Facility  does not have an SOTMP.

## D. CAUSE OF ACTION

24.      Plaintiff will be eligible for parole review in June, 2009. He will NOT actually be eligible for parole release though since he will not be in treatment at the time of the review.

25.      Under Colorado law, the parole board has the discretion of determining when the next parole review will be held if parole is denied the first time. The next parole review can be scheduled for any where from one year to up to three years.

26.      In this case, given the nature of why the defendants will explain Plaintiff is not in treatment- refusing treatment- it is very likely that the next time Plaintiff will be scheduled for parole review will be in three years.

27.      Plaintiff intends to waive his first parole hearing for six months due to the circumstances presented above.in the hopes  that this Court may grant him preliminary injunction directing the defendants to give him access to the treatment program.

28.      On August 30, 2004, this Court found that claims similar to these in this claim are properly asserted, and, in it's final analysis, on November 14, 2006, held that termination from sex offender treatment without due process is unconstitutional. Beebe v. Heil, 333 F.Supp. 2d 1011 (D.Colo.2004)

29.      As a direct result from Beebe, the CDOC created a new AR, 700-32 to correct it's prior failure to provide prisoners due process before termina-tion. Defendants Zavaras, and Stommel were responsible in part for its form-ulation, and approval. Reasonably, Defendants McGill, Cantu, and Landers should have know this by December 8, 2006.

## D. CAUSE OF ACTION

EXHAUSTION OF ADMINISTRATIVE REMEDIES

30.     Plaintiff initiated the CDOC's three step grievance process on December 18, 2007 for this matter when he submitted his Step I grievance. Each of the following steps were timely filed, and, in accordance to Colo.Rev.Stat. §13-17.5-102, the grievance process was exhausted when the third step was submitted on February 27, 2007.

**DEFENDANTS DELIBERATE INDIFFERENCE**

31.     Defendants John P. McGill, and Bonnie Cantu were deliberately indifferent towards Plaintiff's liberty interest in mandatory sex offender treatment in violation of the Fourteenth Amendment when they rejected his attempt to reenter treatment. Their choice to deny Plaintiff reentry to treatment was made with the knowledge of an obvious and serious risk of harm in the form of extended incarceration, transfer to a harsher prison, and potential physical assault. They acted unreasonably especially since they premised reentry on the admission of wrongdoing for which due process was denied in the first place.

32.     Defendant James Lander was deliberately indifferent towards Plaintiff's liberty interest in treatment in violation of the Fourteenth Amendment when he affirmed the denial of reentry to treatment, and denied Plaintiff relief on behalf of the FCF Warden. Lander's acts were done with the knowledge of a serious risk of harm for Plaintiff in the form of extended imprisonment, transfer to a harsher prison, and potential physical assault. His acts were unreasonable because he knew that Plaintiff was not refusing treatment, and, had previously been denied due process prior to termination.

Claim One                                      4.5

## D. CAUSE OF ACTION

33.      Defendants McGill, Cantu, and Landers acts of denying Plaintiff reentry to treatment. or administrative relief was a manifestation of evil intent and/or a callous disregard of Plaintiff's Fourteenth Amendment right to due process. They knew their acts would result in Plaintiff being ineligible for parole release for the rest of his life, or until he is allowed into the mandatory treatment.

34.      Defendants Zavaras and Stommel were deliberately indifferent to Plaintiff's liberty interest in sex offender treatment when they developed, applied, and inforced AR 700-19 without a provision that would address prisoners like Plaintiff who were terminated without due process, and are being denied reentry to treatment due to the prior termination. Their failure to address this issue was unreasonable because they knew that without treatment, Plaintiff would face indefinitely, parole ineligibility, and thus, life incarceration.

2.  Claim Two:  <u>VIOLATION OF EIGHTH AMENDMENT: DENIAL OF PRESCRIBED</u>
                <u>TREATMENT FOR MENTAL DEFICIENCIES</u>
     Supporting Facts:


SEX OFFENDER TREATMENT IS A SERIOUS MEDICAL NEED


35.      Colorado's Lifetime Supervision Act of 1998, ("The Act"), makes

sex offender treatment mandatory, and, a prerequisite to parole release. The

Legislature in it's enactment of this law, made treatment or rehabilitation the

main goal of the law by stating, "without treatment [convicted sex offenders]

will continue to present a danger to the public when released from incarceration."

Colo.Rev.Stat.§18-1.3-1001

36.      The Act created an affirmative duty for the CDOC to treat, and, made

the receipt of treatment mandatory on Plaintiff's behalf. In fact, Plaintiff was

required to undergo a psychological evaluation prior to sentencing in order to

determine scope of mental health treatment he would need to be provided by CDOC.

Colo.Rev.Stat.§16-11.7-105

37.      Between January 9, 2001 to January 28, 2001, Plaintiff underwent an

evaluation by Steven K. Witty, Ph.D. Upon the conclusion of this evaluation, Dr.

Witty diagnosed Plaintiff with four mental deficiencies that would require

specialized mental health treatment.

38.      The CDOC recognized sex offender treatment as a medical need. It is

administered through the CDOC's "Offender Health Services" division, and, this

division is responsible not only for treatment, but also general medical care,

dentistry, and optometry.

## D. CAUSE OF ACTION

39.     The CDOC recognizes sex offender treatment as a mental health issue where it places the responsibility of administering treatmend on the Mental Health departments in it's facilities with the SOTMP.

40.     The Sex Offender Management Board, ("SOMB") defines prisoners like Plaintiff as being, "incurable, dangerous" and always at a risk to reoffend. Thus, the SOMB maintains that only through treatment, may the risk to reoffend be reduced.

41.     Plaintiff's last Progress Assessment Summary, list him as being in "severe" need of sex offender treatment.


DEFENDANTS KNEW PLAINTIFF NEEDED TREATMENT

42.     Under The Act, the diagnosis and prescribed treatment laid out by Dr. Witty became a permanent part of Plaintiff's sentence. That report in fact became part of Plaintiff's CDOC mental health file.

43.     Defendants McGill, Cantu, and Landers had access to Plaintiff's mental health file during all relevant times in this claim, and, reasonably should have not only know of Dr. Witty's evaluation, but, should have been familiar with it as the report was the starting point for the treatment they were responsible for administering. AR 700-19(IV)(B)(3)


DEFENDANTS FAILURE TO PROVIDE PRESCRIBED TREATMENT

44.     Paragraphs  8  to 29 are hereby incorporated into this claim with this reference since Plaintiff relies on those facts for the basis of this claim.


Claim Two                                    5.1

## D. CAUSE OF ACTION

45.     Defendants McGill, Cantu, and Landers are supposed to be trained to provide specialized sex offender treatment, and, reasonable should have known that by denying Plaintiff treatment, they would also be causing his mental conditions to deteriorate.

46.     Defendants McGill, Cantu, and Landers knew that Plaintiff had a diagnosed mental deficiency, that required specialized mental health treatment, and that Plaintiff has no way of obtaining such treatment on his own.

47.     Defendants McGill, Cantu, and Landers acts of denying Plaintiff's reentry to treatment is part of a custom, or policy designed by the SOMB as part of it's "containment" approach to treatment. "Containment" is a euphonious word used by the SOMB to focus more on incarceration rather than actual treatment of sex offenders under The Act.


CAUSATION AND INJURY CAUSED BY DEFENDANTS

48.     The Act Plaintiff is sentenced under has two components. One, is a lower term of incarceration limited by the presumtive range of his class three felony, and two, is an open ended term who's length is determined by his receipt of sex offender treatment and progression therein.

49      The Act's second component acts as a hybrid civil committment in that it's primary focus is upon Plaintiff's rehabilitation. This part recognizes that some sex offenders can improved their deficient mental condition to the point where their danger towards society is reduced.

50.     Without prescribed treatment, Plaintiff's mental deficiencies will not improve. Instead, his mental condition will deteriorate. He cannot treat himself, nor does his incarceration provide the means for him to retain therapist.


Claim Two                              5.2

## D. CAUSE OF ACTION

51.     By denying Plaintiff reentry to treatment, Defendants McGill, Cantu, and Landers knew that Plaintiff would be subjected to potential transfer to a non-SOTMP facility. They knew that in non-SOTMP facilities, prisoners like Plaintiff are subject to an increased risk of physical harm due to the nature of their convictions.

52.     Plaintiff has been transferred to non-SOTMP facilities since he was denied reentry to treatment, and, he has been subjected to threats of physical harm from other prisoners due to the nature of his conviction. He has been diagnosed with anxiety, and depression as a result of not being in treatment.

53.     Plaintiff has had nightmares associated with the reality that if he does not get back into treatment, he will remain parole ineligible, and thus, face a sentence of life in prison through no fault of his own, because he is not refusing treatment, but is being denied treatment.

54.     Defendants McGill, Cantu, and Landers know and knew at the time they chose to deny Plaintiff reentry to treatment, that he would not be eligible for parole release unless and until they decide to allow him reentry to treatment. In effect, they have become jailers instead of treatment providers.

### DEFENDANTS DELIBERATE INDIFFERENCE

55.     Defendants McGill, and Cantu exhibited deliberate indifference towards Plaintiff's Eighth Amendment right to prescribed mental health treatment when they chose to deny him reentry to treatment. They knew their acts would inflict a substantial and serious risk of harm on Plaintiff in the deterioration of his mental condition, and incarceration for life. Their denial of treatment was an unreasonable act of unnecessary and wonton infliction of pain.

Claim Two                               5.3

## D. CAUSE OF ACTION

56.      Defendant Landers exhibited deliberate indifference towards Plaintiff's Eight Amendment right to prescribed mental health treatment when he chose to affirm the denial of reentry to treatment for Plaintiff and answered on behalf of the FCF Warden. He knew his acts would inflict a substantial and serious risk of harm on Plaintiff in the deterioration of his mental condition, and incarceration for life. His denial of Plaintiff's reentry to treatment was an unreasonable act of unnecessary and wonton infliction of pain.

3.  Claim Three: <u>VIOLATION OF FIRST AMENDMENT: RETALIATION FOR ASSISING OTHERS WITH GRIEVANCES</u>

Supporting Facts:

DEFENDANT ED MURO'S RETALIATION AGAINST PLAINTIFF FOR ASSISTING OTHER PRISONERS WITH GREIVANCE SYSTEM.

57.     On August 22, 2009, at about 10:30 A.M., Defendant Ed Muro observed Plaintiff assist approximately (25) prisoners with the grievance system when those prisoners went to their assigned case manager for greivances to file for the policy of allowing female staff observe prisoners while they use the toilet.

58.     Later. on the same day in ¶ 57, while at lunch in the facility-FCF-cafeteria, Defendant Muro observed Plaintiff assist another prisoner with the grievance system by providing him with information on how to use the system. At that time, Muro informed Plaintiff that he could be written up for helping other prisoners. Plaintiff stated that AR 850-4 allows him to assist others.

59.     After lunch, on August 22, 2009, Defendant Muro timed his return to unit 7 of FCF to coincide with Plaintiff's return. At that time Muro asked the unit control officer to hand out the Chronological book, stating, "I'm gonna Chron Johnny Cocharan", or words to that effect, speaking to Plaintiff.

60.     Defendant Muro frequently called Plaintiff derogatory names, and upon hearing the comment in ¶ 59, Plaintiff stated to Muro that he had had enough of his harrassment, and was going to pursue a greivance on the matter. Muro responded that he would have Plaintiff placed into segregation before then.

61.     Approximately 20-30 minutes after the incident in ¶ 60, while in the facility law library, security staff arrived and informed Plaintiff that he was going to be placed into segregation on Remove From Population, ("RFP") status.

## D. CAUSE OF ACTION

62.      It was not until August 28, 2007, that Plaintiff was told why he was in segregation. Then, the investigating officer, Lt. Hawkins, informed him that Muro had filed a report stating that Plaintiff had verbally abused him in the cafeteria.

63.      Plaintiff provided Lt. Hawkins with his version of what happened on the day in question, and additionally informed Hawkins that Defendant Muro had been harrassing him for some time. Plaintiff also pointed out that the AR for RFP indicates that RFP is only for prisoners in immediate threat of harm of themselves or others, and Plaintiff was not put into segregation for over one hour after the alleged incident.

64.      On August 31, 2007, Plaintiff was summarily released from segregation to the general prison population without comment or a charge.

65.      According to CDOC's AR 850-4, prisoners may assist others with the grievance system, and, prison staff are prohibited from retaliating agaist prisoners for using the grievance system.

EXHAUSTION OF ADMINISTRATIVE REMEDIES

66.      On September 11, 2007, Plaintiff initiated the CDOC's grievance system for this matter in accordance to AR 850-4 by filing his Step I. On November 29, 2007, the process was completed when Plaintiff filed his Step III.

DEFENDANTS DELIBERATE INDIFFERENCE

67.      Defendant Ed Muro knew or reasonably should have known that Plaintiff had a protected right to assist other prisoners with the grievance system, and that he was prohibited from retaliating against Plaintiff for doing so. It was unreasonable for Muro to have Plaintiff placed in segregation.

Claim Three                                    6.1

## D. CAUSE OF ACTION

68.       Defendant Muro knew that by placing Plaintiff into segregation for assisting other prisoners with the grievance system, other prisoners would be deterred from from also assisting others with the grievance system.

69.       Defendant Muro placed Plaintiff into segregation because he was helping other prisoners with their grievances, and, he knew that by generating an incident report, Plaintiff would be placed into segregation on RFP. Muro acted unreasonable, because he knew that RFP was only for prisoners in immediate threat of harm to themselves or others.

70.       Defendant Muro's act of generating a report to have Plaintiff placed into segregation on RFP was an act of evil intent, and a manifestation of a callous disregard for Plaintiff's rights under the First Amendment to the U.S. Constitution.

## D. CAUSE OF ACTION

4. Claim Four: VIOLATION OF FIRST AMENDMENT: RETALIATORY TRANSFER

Supporting Facts:

DEFENDANTS RETALIATORY TRANSFER OF PLAINTIFF FOR
FILING GRIEVANCES AGAINST PRISON STAFF.

71.      Defendant Richard DeGroot was Plaintiff's assigned case manager for unit 7, in FCF.

72.      Pursuant to FCF's rules under AR 850-4, prisoners are required to go to their assigned case managers to obtain grievance forms.

73.  .      Defendant Thomas Misel was assigned as the case manager supervisor during the relevant times in this claim. He was responsible for the approval of some of the actions taken by Defendant DeGroot.

74.      On September 9, 2007, Plaintiff was moved from FCF's unit 5 to unit 7. Plaintiff was previously assigned to unit 7 before being placed into segregation as defined in Claim Three of this action. Upon arrival, Plaintiff requested a grievance form from DeGroot.

75.      Defendant DeGroot refused to provide a grievance form to Plaintiff at first. Plaintiff informed DeGroot that he would use the chain of command to obtain a grievance form. At that time, DeGroot gave Plaintiff a grievance form to file a complaint against Defendant Muro. DeGroot informed Plaintiff that if he files a grievance against Muro, Plaintiff would be moved to the worst facility he could find.

76.      On September 11, 2007, Plaintiff turned in his grievance against Muro to Defendant DeGroot. DeGroot said, " I hope you like Limon" or words to that effect.

## D. CAUSE OF ACTION

77.        On September 20, 2007, Defendant DeGroot completed an "Inmate Reclassification Custody Rating" form, ("Reclass") on Plaintiff without notice to Plaintiff. On the forms comments section, DeGroot stated, " Routine Review; He is moving to LCF in denial".

78.        The Reclass completed by DeGroot was not routine as it was done outside of it's six month cycle. Normally, prisoner's reclasses are done every six months. At the time relevant to this claim, Plaintiff's reclass cycle was April/October. In other words, up to this point, Plaintiff's previous reclasses occurred in either April or October.

79.        On September 21, 2007, Defendant Misel approved the reclass from Defendant DeGroot by signing the same. Misel added the comments, " Reviewed for movement to LCF". This was unusual. None of Plaintiff previous reclasses were generally signed by committee.

80.        Defendant Misel was familiar with Plaintiff's claims of being denied sex offender treatment. He knew Plaintiff had not refused or denied treatment.

81.        On September 25, 2007, Plaintiff was transferred from FCF, a Medium level facility, to LCF a level IV facility. This was a regressive transfer, and Plaintiff had not received a write up or any other disciplinary action to warrant such a transfer.

82.        Limon Corr. Facility was in a state of "Lockdown" in that the prisoners  there were not being allowed out of their cells for more than four hours per day. LCF was significantly harsher than FCF. In addition, LCF does not have an SOTMP.

## D. CAUSE OF ACTION

83.        Defendants DeGroot and Misel knew that LCF was much harsher than

FCF. They knew that prisoners like Plaintiff, convicted of sex offenses are

subject to physical assault for no more reason than the nature of their crime.

84.        The Defendants act of specifying in Plaintiff's reclass a specific

facility for transfer was unusual. Normally, when a prisoner must be transferred,

the reclass will not identify a specific facility for transfer, but will only

indicate that prisoner should be transferred

85.        Defendant Misel knew when he approved the reclass submitted by

Defendant DeGroot that it was in response to Plaintiff's filing a grievance

against Defendant Muro.

## DEFENDANTS DELIBERATE INDIFFERENCE

86.        Defendants DeGroot and Misel knew that Plaintiff had a protected

right to seek redress against prison staff through the CDOC's grievance process.

They knew that it was prohibited for prison staff to retaliate against those

prisoners who use the grievance system to seek redress against prison staff.

87.        Defendants DeGroot and Misel subjected Plaintiff to a regressive

transfer knowing that prisoners of ordinary firmness would think twice before

pursing similar acts of filing grievances against staff. They thought that by

exposing Plaintiff to the harsh environment in LCF, they would discourage him

from filing anymore grievances against staff.

88.        Defendants DeGroot and Misel caused Plaintiff's transfer as a

result at least in part for him filing grievances against staff. They acted

unreasonable by transferring Plaintiff and contrary to the CDOC rules that

prohibit retaliation against prisoners who use the grievance system.

## D. CAUSE OF ACTION

89.      Defendants DeGroot and Misel decision to initiate and approve
the transfer of Plaintiff from FCF to LCF was an act of evil intent and a
manifestation of a callous disregard for Plaintiff's rights guaranteed under
the First Amendment to the U.S. Constitution.

### D. CAUSE OF ACTION

5. Claim Five: **VIOLATION OF FIRST AMENDMENT: ACCESS TO COURTS**

   Supporting Facts:

     DEFENDANTS DENIAL OF ACCESS TO RULE 10 OF THE U.S. SUPREME
     COURT RULES.

90.    Plaintiff was denied the ability to seek certiorari to the U.S.
Supreme Court as a direct result of the CDOC's legal access program. The
legal access program does not afford prisoners the ability to research case
law from other state courts of last resort.

91.    Rule 10(b) of the Supreme Court Rules, ("SCR"), provides that a
Petitioner may seek a writ of Certiorari where a state court of last resort has
decided an important federal question in a way that conflicts with the decision
of another state court of last resort.

92.    Plaintiff sought to file certiorari on his underlying criminal case
under Rule 10(b) of the SCR but could not. For example, in the Colo. Appellate
Court, the court relied upon Hurst v. Cook, 777 P.2d 1029 (Utah 1989) to support
it's denial of a point in Plaintiff's claims.

93.    When Plaintiff attempted to obtain Hurst at the SCF law library, he
was informed that he cannot access Utah state case law, only case law from
Colorado is provided.

94.    Plaintiff sought certiorari in the state supreme court and was
denied on April 7, 2008.

95.    Under the SCR, Plaintiff had until July 7, 2008 to seek certiorari
to the U.S. Supreme Court.

## D. CAUSE OF ACTION

96.     Plaintiff believed that there may have been a conflicting state court of last resort decision to the one rendered by the Colorado Appellate Court in his underlying criminal case, but, the CDOC's legal access program denied him the reasonable opportunity to research his theory by denying him access to other state case law.

97.     Instead, Plaintiff was forced to attempt finding such case law by casting a wide net through the vast Westlaw key search digest. However, CDOC's legal access program severely limits access to the Westlaw database. The CDOC only has one disc set, and the facility law libraries must share access.

98.     For example, Plaintiff has requested case law only located on the database only to find out that the legal assistance cannot obtain access due to the amount of traffic from the other legal assistants.

99.     Lack of reliable access to the database, lockdowns, and non-availability of other state's case law resulted in Plaintiff missing the deadline for the filing of his petition for a writ of certiorari to the U.S. Supreme Court.

100.    As CDOC's Manager of the Office of Correctional Legal Services, Defendant Cathie Holst knew that prisoners like Plaintiff would not be able to access case law from other states. She is responsible for the legal access program in SCF.

101.    As the Executive Director of the CDOC, Defendant Zavaras is the final authority on the set up of each facilities law library. He finalizes and approves the policies and guidelines for the CDOC's law libraries.

## D. CAUSE OF ACTION

**DEFENDANTS USE OF 400% INCREASE IN COPY FEES TO HINDER PLAINTIFF'S ACCESS TO THE COURTS.**

102.    On June 23, 2008, Defendant Zavaras issued an Executive Directive that raised the price prisoners must pay for copies of their legal documents from five cents, to twenty-five cents.

103.    Defendant Holst as manager of the CDOC's legal access program was responsible for the implementation of the new executive directive in all law libraries operated by the CDOC including the one in SCF.

104.    The method of collecting used by the CDOC is lump sum. That is, if a prisoner incurres a balance in the negative of $20.00, the CDOC will take the entire balance of the prisoner's account only has $20.00 in it.

105.    Plaintiff is only paid about $12.00 per month from his prison job, or about ¢.60 per work day.

106.    The CDOC does not provide prisoners personal hygiene items. Instead, prisoners must use the "canteen" to purchase soap and other items.

107.    There is a CDOC AR for prisoners who become indigent, however, the ability to qualify for indigency status is nearly impossible. First, the prisoner must have a zero balance or less for a continuous (30) days. This never happens since every prisoner is paid at least $5.00 per month.

108.    Colorado Revised Statute, §24-72-306 governs the fees criminal justice agencies may charge for copies. The statue was recently amended by limiting the per page fees to no more than twenty-five cents per page. Any fees charged must be for cost not profit.

## D. CAUSE OF ACTION

109.     By raising the fees for legal copies, Defendant Zavaras has created source of profit for the CDOC in which over 50% of the fee goes to profit.

110.     Colo.Rev.Stat.§24-72-306 only applies to the cost criminal justice agencies incur copying their own documents and records. Plaintiff's case papers, and pleadings are not owned, made, or maintained by the CDOC.

111.     Plaintiff is faced with the choice each time he must file a paper to the courts with deciding how he can afford the copy fees and buying soap and other essential for personal hygiene.

EXHAUSTION OF ADMINISTRATIVE REMEDIES

112.     Plaintiff initiated the CDOC's system for grievances in this matter on July 7, 2008, and, in accordance to state law, exhausted his remedies on October 6, 2008 when he submitted the final step in the process.


DEFENDANTS DELIBERATE INDIFFERENCE

113.     Defendants Zavaras and Holst acted with deliberate indifference towards Plaintiff's First Amendment rights when they formulated a legal access program without access to potentially conflicting state court of last resort case law. They knew that Plaintiff would be prohibited from pursuing certiorari under SCR 10(b). Their acts were unreasonable, because the Westlaw database contains such case law a minimum cost without the CDOC having to purchase physical books.

114.     Defendants Zavaras and Holst acted with deliberate indifference towards Plaintiff's First Amendment rights when they chose to increase and implement an increase in the price of copying legal copies. Their acts were unreasonable since the increase was for profit, and discouraged access to the courts.

## D. CAUSE OF ACTION

6. Claim Six: **VIOLATION OF EIGHTH AMENDMENT: FAILURE TO PROTECT**

　　Supporting Facts:

115.　　On February 6, 2008, Plaintiff was moved from Unit 2C of the Limon

Corr. Facility by Lt. Piper due to threats he was receiving from the other

prisoners due to the nature of his conviction; a sex offense.

116.　　On or about March 24, 2008, Plaintiff was informed by defendant

Richard Lind that he was going to moved to out of Unit 1 the next day. Lind told

Plaintiff that unit one was not going to be used to protect sex offenders.

117　　At the time Plaintiff was being informed that Unit 1 was not going

to be used for sex offenders, there was at least one other prisoner sex offender

in the unit, and numerous other prisoners in the unit not assigned to work there.

118.　　On March 25, 2008, Plaintiff was ordered to move out of unit one to

unit five. Staff informed Plaintiff that Maj. Lind had ordered the move. In fear

for his life and safety, Plaintiff refused, and was placed into segregation.

119.　　Other sex offender prisoners had been assaulted in LCF in the time-

frame Defendant Lind was ordering Plaintiff to move, and he reasonably should

have known this.It is well known that sex offenders face an increased risk of

harm, especially in facilities without an SOTMP.

DEFENDANTS DELIBERATE INDIFFERENCE

120.　　Defendant Richard Lind acted with deliberate indifference when he

decided to have Plaintiff moved from Unit 1 to Unit 5 in LCF. Lind knew that by

making Plaintiff move, he was subjecting Plaintiff to a serious increase in the

risk of physical assault. Lind's act was unreasonable since there was no need

for bed space in Unit 1, and other sex offender prisoners were also in the unit.

## D. CAUSE OF ACTION

7. Claim Seven: **VIOLATION OF FOURTH AMENDMENT: INVOLUNTARY EXPOSURE**

   Supporting Facts:

121.     In August or September of 2007, Plaintiff along with all other prisoners in FCF was told that they would no longer be allowed to temporarily cover their cell door windows while using the toilet or dressing. This mandate was issued in the form of a memo from Defendant Al Estep, FCF's Warden.

122.     Prior to this mandate, prisoners would cover their cell door windows in FCF's cellhouse 7 with a towel in a manner which still afforded staff the ability to view the cell interior if needed by simply pushing the towel to the side.

123.     Female staff are often assigned to walk the tiers in the cellhouses and in doing so, under the new mandate, frequently view male prisoners in the nude, or while using the toilet.

124.     This policy is not only enforced in FCF, but also in SCF. Plaintiff has been viewed numerous times while using the toilet or dressing by female staff both in FCF, and his current facility assignment, SCF. For example, if a female guard is assigned  to walk the tier, it is not uncommon for Plaintiff to be involuntarily exposed two or more times by that female in one shift.

125.     Plaintiff has been viewed while urinating by female staff. Usually, if Plaintiff's cellmate is present, Plaintiff will turn his back towards the cellmate and face towards the opening of the cell.In this position, female guards are afforded an unobstructed view of Plaintiff's penis.

126.     Plaintiff could easily be written up for exposure, or some other type of sexual rule violation by a female guard or male guard under CDOC's AR 150-1, Class II, Rule 24.5, "Sexual Harassment".

## D. CAUSE OF ACTION

127.     Each time Plaintiff utilizes his toilet or changes his clothes, he must choose between a potential write-up for exposure, or disobeying a lawful order by covering his celldoor window temporarily.

128.     This same policy is generally not enforced on or in the womens prison facilities. They are allowed to temporarily cover their celldoor windows to avoid involuntary exposure by male guards.

129.     Defendant Estep has rejected Plaintiff's suggestion to allow prisoners to temporarily cover their celldoor windows with a nylon or plastic strip that is opaque. Such a measure would balance prisoners right to not be subjected to involuntary exposure, and the CDOC's responsibility to provide safety and security in the facility.

130.     Plaintiff has been subjected to involuntary exposure here in SCF by both male and female prison staff, and has been threatened with a write-up for temporarily covering his window, and for sexual harassment by prison staff when inadvertantly viewed by them on their rounds.

EXHAUSTION OF ADMINISTRATIVE REMEDIES

131.     Plaintiff properly and timely utilized the CDOC's system for grievances by filing all three steps in the process.

DEFENDANTS DELIBERATE INDIFFERENCE

132.     Defendant Al Estep acted with deliberate indifference towards Plaintiff's Fourth Amendment rights when he chose to enforce a rule that denies prisoners temporary privacy while dressing and using the bathroom. He knew Plaintiff could be written-up for exposure or disobeying a lawful order. Estep's acts were unreasonable, since the same goals could have been balanced with Plaintiff's rights with a piece of plastic or nylon.

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? XX Yes ___ No (CHECK ONE). If your answer is "Yes," complete this section of the form. If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit. The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1. Name(s) of defendant(s) in prior lawsuit:

   MARLA R. PRUDEK, a Colo. Attorney.

2. Docket number and court name:

   03CV0863, Dist. Ct. El Paso County, CO

3. Claims raised in prior lawsuit:

   Negligence and Breach of Contract

4. Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?):

   The Dist. Ct entered summary judgment on defendants motion, due to plaintiff's inability to retain expert witness

5. If the prior lawsuit was dismissed, when was it dismissed and why?

   Summary judgment was entered against the plaintiff, and case was dismissed

6. Result(s) of any appeal in the prior lawsuit:

   Colo.App.Ct. affirmed judgment of the Dist. Ct. in Case No. 05CA735

## F. ADMINISTRATIVE RELIEF

1. Is there a formal grievance procedure at the institution in which you are confined?

   XX Yes ___ No  (CHECK ONE).

2. Did you exhaust available administrative remedies?  XX Yes ___ No (CHECK ONE).

(Rev. 1/30/07)                    7

## G. REQUEST FOR RELIEF

State the relief you are requesting.  If you need more space to complete this section, use extra paper.  The additional requests for relief should be labeled "G. REQUEST FOR RELIEF."

WHEREFORE, Plaintiff request that the Court grant the following

relief:

A.  Issue a declaratory judgment stating that:

      1.  CDOC's AR 700-19 is unconstitutional as applied to Plaintiff

          since it conditions the receipt of mandatory sex offender

          treatment on his ability to fit into the modality of "S5-R"

          and preconditions that modality on his admission of guilt for

          wrongs he was denied due process for in the first place.

      [continued on following pages 8.1, and 8.2]

## DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct.  *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed on *February 25, 2009*
                (Date)

                             (Prisoner's Original Signature)

## G. REQUEST FOR RELIEF

2. that Colo.Rev.Stat.§18-1.3-1001 is unconstitutional as applied to Plaintiff because it acts like a civil committment statute by conditioning release from incarceration upon rehabilitation but affords no civil committment safeguards, and denies a realistic opportunity for release from incarceration.

3. prisoners like Plaintiff-classified as needing sex offender treatment-must be afforded due process prior to their transfer out of an SOTMP facility to a non-SOTMP facility when they want treatment, but are being denied treatment by the SOTMP.

B. Issue an injunction ordering Defendants Zavaras and Stommel and/or their agents to:

1. Immediately transfer Plaintiff to a facility with the SOTMP and place Plaintiff into a Phase 1 treatment group forthwith.

C. Issue an injunction ordering Defendants Zavaras and Estep and/or their agents to:

1. Discontinue the policy denying prisoners momemtary privacy while using the toilet and dressing, and instead, provide prison cells with semi-opaque plastic/vinyl sheets to partially cover their cell door windows to balance prisoners Fourth Amendment rights with the CDOC's duty to provide safety in it's facilities.

D. Award compensatory damages jointly and severally against:

1. Defendants McGill, Cantu, and Lander for the loss of participation in sex offender treatment, and the accompanying losses incurred therefrom. such as: earned time, work and vocational assignments.

## G. REQUEST FOR RELIEF

2. Defendants McGill, Cantu, and Lander for mental and emotional injury resulting from their deliberate portrayal of Plaintiff as refusing treatment, and the resulting transfer to a much more dangerous prison facility.

3. Defendant Muro for loss of privileges and quality of life that is afforded to prisoners in the general population as opposed to that in segregation when he had Plaintiff Removed From Population out of retaliation.

4. Defendants DeGroot and Misel for the loss of access to SOTMP and Plaintiff's assignment to Graphic Design from their act of retaliation for filing grievances against staff.

5. Defendants DeGroot and Misel for mental and emotional injury resulting from being transferred to a much harsher prison facility with serious risk of harm.

6. Defendant Richard Lind for mental and emotional injury resulting from his attempt to place Plaintiff in a more dangerous cellhouse due to Plaintiff's sex offense conviction.

E. Award punitive damages against Defendants McGill, Cantu, Lander, Muro, DeGroot, Misel, and Lind.

F. Grant such other relief as it may appear that Plaintiff is entitled.

## CERTIFICATE OF FILING

I, James K. Conkleton hereby certify that on this 25th day of February, 2009, I placed the foregoing Amended Complaint, into the hands of Sterling prison staff, postage prepaid, for legal mail, U.S. Postal Service for mailing through the prison's internal system for mailing legal mail, addressed to: U.S. District Court, 901 19th Street, Rm A-105, Denver, CO 80294-3589.

Under penalty of perjury, I declare that pursuant to 28 U.S.C.§1746, the information above is true and correct.

Executed On:  February 25th. 2009

James K. Conkleton, CDOC# 108986

Plaintiff, **pro se**

P.O.B. 6000, Sterling Corr. Fac.

Sterling, CO  80751-0600