IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02612-WYD-MEH

JAMES CONKLETON,

Plaintiff,

v.

ARISTEDES W. ZAVARAS, in his official capacity as Executive Director of the
    Colorado Department of Corrections ("CDOC"),
JOE STOMMEL, in his official capacity as the Program Administrator of the Sex
    Offender Treatment and Monitoring Program ("SOTMP") for the CDOC,
JOHN P. McGILL, in his individual and official capacities as a Treatment Provider
    for the SOTMP,
BONNIE CANTU, in her individual and official capacities as a Treatment Provider
    for the SOTMP,
JOHN LANDER, in his individual and official capacities as a Treatment Provider
    for the SOTMP,
ED MURO, in his individual and official capacities as a Correctional Officer I
    for the CDOC,
RICHARD DeGROOT, in his individual and official capacities as a Case Manager
    for the CDOC,
CATHIE HOST, in her official capacity as Manager for the Officer of Correctional
    Legal Services for the CDOC,
THOMAS MISEL, in his individual and official capacities as Case Manager
    for the CDOC,
AL ESTEP, in his official capacity as the Warden of the CDOC's Fremont Corr.
    Facility, and
RICHARD LIND, in his individual and official capacity as a Correctional Officer V,

Defendants.

## MOTION TO DISMISS IN PART

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Zavaras, Stommel, McGill, Cantu, Lander, Muro, DeGroot, Holst, Misel and Estep, by and through their counsel, the Colorado Attorney General, respectfully move to dismiss the Amended Prisoner Complaint (Doc. 23, filed March 2, 2009), in part, for failure to state a claim upon which relief can be granted. Defendants

move to dismiss Claims One, Two, Three, Five, Six and Seven.[1]  In support of their motion, Defendants state as follows.

## STATEMENT OF FACTS

Plaintiff is a *pro se* prison inmate incarcerated in the Colorado Department of Corrections ("CDOC").  In Claim One, Plaintiff alleges that, on March 19, 2001, he was sentenced under Colorado Lifetime Supervision Act, which requires that he participate in CDOC's Sex Offender Treatment and Monitoring Program ("SOTMP").  Doc. 23, p. 7.  Plaintiff claims that he entered Phase I of the SOTMP in June 2003.  *Id.* at p. 8.  He alleges that Defendant McGill terminated him from the program in July 2003 without advanced notice or the opportunity for Plaintiff to rebut the termination.  *Id.*

Beginning in May 2006, Plaintiff claims that he submitted a rescreening form to reenter the SOTMP, but was ultimately denied reentry on December 8, 2006.  *Id.* at pp. 8-9.  Plaintiff alleges that he was not afforded due process in the decision to deny his reentry into the SOTMP. *Id.* at pp. 9-10.  Plaintiff implicates Defendants McGill, Cantu and Lander, all of whom are SOTMP treatment providers, in the denial of his reentry into the SOTMP.  As a result of the denial, Plaintiff alleges that his eligibility for parole has been affected.  *Id*. at pp. 10, 11.  He also claims that he has been transferred on two occasions to non-SOTMP facilities, which subjects him to increased risk of physical assaults, and that he is subjected to the denial of "some vocational and educational assignments."  *Id.*  Plaintiff also claims that Defendant Stommel, the SOTMP Program Administrator, and Defendant Zavaras, the Executive Director of the CDOC, failed to include a provision in AR 700-19, which contains the CDOC's policies regarding the

---

[1] Defendants are filing an Answer simultaneously with this motion to address Claim Four.

SOTMP, to afford prisoners due process when they are terminated from or seeking reentry into the SOTMP.  *Id.* at 13.

In Claim Two, Plaintiff alleges that McGill, Cantu and Lander violated his Eighth Amendment rights by denying him treatment in the SOTMP.  *Id.* at pp. 15.  He claims that they were deliberately indifferent to his serious medical condition, that being the mental health deficiencies that have caused him to require sex offender treatment.  *Id.* at pp. 14-16.

In Claim Three, Plaintiff alleges that Defendant Muro, a Corrections Officer, retaliated against him for assisting other inmates with filing grievances.  *Id.* at p. 19.  Plaintiff claims that he was placed in segregation after assisting these other inmates.  *Id.*  Plaintiff later learned that Muro had filed a report stating that Plaintiff had verbally abused Muro.  *Id.* at p. 20.  Plaintiff states that he was released back into the general population "without comment or charge."  *Id.*

In Claim Five, Plaintiff states that he was denied access to the courts due to the fact that CDOC's legal access program, which is managed by Defendant Cathie Holst and approved by Defendant Zavaras, "severely limits access to the Westlaw database."  *Id.* at p. 27.  As a result of this limited access, Plaintiff claims that he was unable to access a case used by the appellate court, and subsequently missed the deadline to file a petition for writ of certiorari in the U.S. Supreme Court.  *Id.* at pp. 26-27.  In addition, Plaintiff claims that his access to the courts was hindered because Zavaras issued an executive directive, which was implemented by Holst, resulting in increased copying costs for inmates.  *Id.* at p. 28.

In Claim Six, Plaintiff alleges that Defendant Lind, a Corrections Officer, ordered that he be moved from Unit 1 to Unit 5 at LCF.  *Id.* at p. 30.  As a result, Plaintiff claims that he was subjected to an increased risk of harm due to his being a sex offender.  *Id.*

In Claim Seven, Plaintiff claims that Defendant Estep, the Warden of FCF, issued a mandate that disallowed prisoners to cover their cell door windows. *Id.* at p. 31. As a result, Plaintiff claims that he has been viewed by Corrections Officers, including females, while using the toilet. *Id.* Plaintiff asserts that he "could easily be written up for exposure, or some other type of sexual rule violation…" as a result of this mandate. *Id.*

Plaintiff seeks injunctive and declaratory relief, as well as compensatory and punitive damages. *Id.* at pp. 32-36.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)). The Court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). All factual allegations pled in the complaint are accepted as true and are construed in the light most favorable to the plaintiff. *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007). A complaint may be dismissed under Rule 12 if it is clear from the complaint itself that the claims are barred by an affirmative defense such as the statute of limitations. *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1310 n. 3 (10th Cir. 1999).

## ARGUMENT

**I.    DEFENDANTS ARE IMMUNE FROM LIABILITY FOR DAMAGES IN THEIR OFFICIAL CAPACITIES**

Plaintiff asserts claims against the Defendants in their official capacities, which is an attempt to impose liability on their employer, the CDOC. *Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988). Under the Eleventh Amendment, states and their agencies are not subject to suit for damages or retroactive imposition of injunctive relief by their own citizens in federal court. *Kentucky v. Graham*, 473 U.S. 159, 169-70 (1985). Official capacity suits are equivalent to suits against the State and are barred. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment "constitutes a bar to the exercise of federal subject matter jurisdiction." *Fent v. Oklahoma Water Res. Bd.*, 235 F.3d 553, 559 (10th Cir. 2000).

Furthermore, a § 1983 action may only be brought against a "person." 42 U.S.C. § 1983. Neither states nor state officers sued in their official capacity are 'persons' subject to suit under section 1983." *Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994). Therefore, the Court lacks jurisdiction over Plaintiff's claims for damages against the Defendants in their official capacities.

### II. PLAINTIFF'S COMPENSATORY DAMAGES CLAIM SHOULD BE DISMISSED BECAUSE HE FAILED TO ALLEGE A PHYSICAL INJURY

Under the Prison Litigation Reform Act ("PLRA"), an inmate cannot bring a civil action for compensatory damages in the absence of a physical injury. "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). "The statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional." *Searles v. Van Bebber,* 251 F.3d. 869, 876 (10th Cir. 2001) (holding that PLRA barred compensatory damages absent a physical injury). Plaintiff's Complaint contains no facts indicating that he ever suffered from a physical injury. Therefore, any request for compensatory damages is barred under the PLRA.

### III. CLAIM ONE SHOULD BE DISMISSED

#### A. Plaintiff's claims are barred by the statute of limitations.

Civil rights claims brought under 42 U.S.C. § 1983 are governed by the two-year statute of limitations contained in § 13-80-102, C.R.S. *Blake v. Dickason*, 997 F.2d 749, 750-51 (10th Cir. 1993). "Section 1983 claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994).

In Claim One, Plaintiff alleges that he was terminated from the SOTMP in July 2003. Doc. 23, p. 8. Therefore, the statute of limitations began to run sometime in July 2003. *Hunt, supra*. Although Plaintiff did not provide a specific date, the Complaint in this action was not filed until February 25, 2009, which was well beyond the two-year requisite period.[2] Plaintiff's claims regarding termination from the SOTMP are untimely and should be dismissed.

Plaintiff also alleges that he was denied reentry back into the SOTMP on December 8, 2006. Doc. 3, p. 9. Therefore, his claims regarding reentry are also barred by the two year statute of limitations, as he was required to file these claims no later than December 8, 2008.

#### B. In the alternative, Plaintiff fails to allege that Zavaras and Stommel personally participated in the alleged violations.

If a defendant is sued in his/her individual capacity, the complaint must allege facts which, if proven, show that the defendant personally participated in the alleged violation. Otherwise, the complaint fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976).

---

[2] Under the "mailbox rule," a complaint is deemed filed when it is delivered to prison authorities for mailing. *Houston v. Lack*, 487 U.S. 266, 270 (1988). Defendants do not know when Plaintiff delivered his Complaint to prison authorities, but have instead used the date upon which Plaintiff executed the Complaint, February 25, 2009.

In Claim One, Plaintiff implicates both Defendants Zavaras and Stommel due to their positions as the Executive Director and the SOTMP Program Administrator. Doc. 23, pp. 8, 13. He also claims that they were deliberately indifferent because they developed and enforced AR 700-19 without a due process provision for termination from the SOTMP. *Id*. at p. 13.

Officials who are not personally involved in the alleged violation are not subject to a civil rights claim under a *respondeat superior* theory merely because they hold positions of authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). A supervisor's liability can only be based on his failure to stop a subordinate's constitutional violation of which he is aware. *Woodward v. City of Worland*, 977 F.2d 1392, 1399-1400 (10th Cir. 1992), *cert. denied*, 509 U.S. 923 (1993). Mere negligent supervision does not state a claim. *Id*. Relief is not possible without a demonstration that the supervisor participated in the misconduct, personally directed the misconduct, or, with actual knowledge of the misconduct, approved of it, acquiesced in it or failed to stop it. *Id*.

Plaintiff only names Zavaras and Stommel due to their supervisory positions within the CDOC. He provided no facts indicating that either Zavaras or Stommel actually participated in or were aware of and acquiesced in the decision to terminate him from the SOTMP or to deny him reentry. Any connection between these Defendants and his due process allegations due to their involvement in developing AR 700-19 is tenuous at best.

### C.   In the alternative, claim one fails to state a due process claim.

To state a due process claim, a plaintiff must allege: (1) deprivation of a liberty or property interest protected by the Due Process Clause. If the plaintiff can do so, he or she must then show (2) the procedures utilized were inadequate under the circumstances. *See Veile v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir. 2001). The interests protected by the Due Process

Clause are those found within the United States Constitution itself, or those created by federal or state law. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). A person must have more than a mere need, desire, or hope in order to have a liberty interest protected by the Due Process Clause. *Id.* He must demonstrate that he has a "legitimate claim of entitlement" to the right asserted in the complaint. *Id.*

Plaintiff cites to *Beebe v. Stommel,* 333 F.Supp.2d 1011 (D.Colo.2004), which held that an inmate who is sentenced under Colorado's Lifetime Supervision of Sex Offender's Act has a liberty interest in being afforded a due process hearing before being terminated from the SOTMP. *Id.* at 1018; *See also Beebe v. Stommel,* 02-cv-01993-WYD-BNB, *Findings of Fact and Conclusions of Law* (Doc. # 163, issued 11/13/06). Subsequent to the 2006 decision in *Beebe*, on February 15, 2007, the CDOC implemented Administrative Regulation 700-32, which set forth guidelines for the procedures to be followed prior to the termination of an offender from the SOTMP. *See* CDOC Administrative Regulation 700-32.[3]

Prior to *Beebe*, there was no court decision holding that a convicted sex offender sentenced under the Colorado Sex Offender Lifetime Supervision Act has a liberty interest in participating in sex offender treatment.[4] Neither the *Beebe* case nor AR 700-32 has retroactive application. Therefore, Plaintiff's termination from the SOTMP, which occurred in July 2003, would not have been subject to the procedural due process provisions set forth in AR 700-32. Plaintiff also appears to argue that *Beebe* is controlling with regard to the denial of his reentry into SOTMP. *See* Doc. 23, p. 11. The *Beebe* case and AR 700-32 only apply to offender's

---

[3] A copy of the AR is available on the CDOC's website, www.doc.state.co.us

[4] A district court ruling does not create clearly established law. *See Roska v. Peterson*, 328 F.3d 1230, 1248 (10th Cir. 2002); *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).

termination from the SOTMP.  *See* Exhibits A, B.  There is no case in this jurisdiction that recognizes a liberty interest in the ability to reenter the program.

With regard to Plaintiff's allegation that he has been subjected to the denial of "some vocational and educational assignments," Plaintiff did not allege that such denial actually occurred.  *Id.* at pp. 10, 11.  Even so, Prisoners are not entitled to be employed while in prison.  *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991); *Templeman v. Gunter*, 16 F.3d 367 (10th Cir. 1994).

### IV.   CLAIM TWO FAILS TO STATE AN EIGHTH AMENDMENT CLAIM

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1977).  Deliberate indifference involves both an objective and subjective component.  A plaintiff must prove that, objectively, he was deprived of a "sufficiently serious" need, and that, subjectively, the prison official knew of and disregarded an excessive risk to the inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994).

Plaintiff alleges that the denial of his reentry into the SOTMP violated his Eighth Amendment rights because it consisted of deliberate indifference to his medical needs.  Doc. 23, pp. 14-16.  Plaintiff claims that he underwent an evaluation between January 9, 2001 and January 28, 2001 by a "Dr. Witty," who diagnosed him with "four mental deficiencies that would require specialized mental health treatment."  *Id.* at 14.  This evaluation occurred prior to his CDOC incarceration, since Plaintiff states that he was sentenced in March 2001.  *Id.* at p. 7.

The Tenth Circuit has held that there is no right under the Eighth Amendment to medical treatment or SOTMP for sex offenders, unless such treatment was prescribed by physician as medically necessary.  *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).  The mere fact

9

they are convicted sex offenders does not mean they have psychological disorders that require treatment. *Id.* Plaintiff's allegations concerning his diagnosis by a "Dr. Witty," which occurred sometime prior to his CDOC sentence, are vague and conclusory and do not contain sufficient fact to support that he suffers from a serious medical condition. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Moreover, the fact that Plaintiff alleges that Defendants McGill, Cantu and Lander and "should have" known about Dr. Witty's evaluation due to their having access to his mental health records is insufficient to show that they knowingly disregarded an excessive risk to the inmate's health or safety. *Farmer* 511 U.S. 825 at 837.

## IV.   CLAIM THREE FAILS TO STATE A CLAIM FOR RETALIATION

To state a retaliation claim, a plaintiff must allege that: 1) plaintiff was engaged in a constitutionally protected activity; (2) the defendants' actions caused plaintiff to suffer an injury sufficient to chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendants were substantially motivated by plaintiff's involvement in the constitutionally protected activity. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). Under the third element, a plaintiff must show the "actual motivating factor behind defendant's action was retaliation for his prior or current litigation. He must prove that 'but for' the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990).

In Claim Three, Plaintiff states that Defendant Muro retaliated against him because of his assisting other inmates with their grievances. Doc. 23, p. 19. Plaintiff alleges that Muro wrote an incident report stating that Plaintiff had verbally abused him. *Id*. at p. 20. Plaintiff was placed in segregation, and was never written up for the verbal abuse upon his release. *Id*. There is no constitutional right to assist other inmates with their grievances or lawsuits. *Smith*, 899

F.2d at 950 (An inmate does "not have a protected interest in providing legal representation to other inmates"); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). As such, Plaintiff's third claim fails because he was not engaging in a constitutionally protected activity. *Worrell*, 219 F.3d at 1212.

### V. CLAIM FIVE FAILS TO STATE AN ACCESS TO COURTS CLAIM

Plaintiff asserts that Defendants Holst and Zavaras limited his ability to access the courts in violation of his rights under the Sixth Amendment.[5] Doc. 23, pp. 26-27. Plaintiff claims that he was unable to file a timely petition for writ of certiorari with the U.S. Supreme Court due to "[l]ack of reliable access to the database, lockdowns, and non-availability of other state's case law." *Id.* at p. 27. Plaintiff also asserts that the increased cost of photocopying forces him to choose between filing legal actions and "essential" personal hygiene items. *Id.*

An inmate's right under the Sixth Amendment relates to his or her access to the courts, <u>not</u> access to a law library. Inmates have no Sixth Amendment right to use a law library. They only have the right to obtain meaningful access to the courts to pursue constitutional claims. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). An inmate is only entitled to "adequate, effective, and meaningful" access to the courts. Access to the courts requires the provision of "adequate law libraries or adequate assistance from persons trained in law" to all inmates. *Bounds v. Smith*, 430 U.S. 817, 822 (1977). However, "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance. . ." *Lewis*, *supra*, 518 U.S. at 351. States are not required to provide unlimited access to the law library. *Twyman v. Crisp*, 584 F.2d 352, 358 (10th Cir. 1978). "[R]estricted access to the law library is not, per se, denial of access to the courts." *Id*. at 357. States need only provide inmates with "a reasonably adequate opportunity" to present their

legal claims. *Bounds*, 430 U.S. at 825. The inmate must demonstrate an actual injury other than simply alleging "that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, *supra*.

The harm Plaintiff alleges here appears to be that he missed a deadline for which <u>he</u> was responsible, thus implying that the U.S. Supreme Court would have granted his petition for certiorari had he filed a timely Petition. Doc. 23, pp. 26-27. Plaintiff's allegations concerning the inability to access out of state case law is confusing, since he claims that he "was forced to attempt finding such case law by casting a wide net through the vast Westlaw key search digest." *Id.* This implies that he did have access to out of state case law. Nonetheless, the fact that Plaintiff admits that he regularly has access to Westlaw indicates that Plaintiff had a reasonable and adequate access to the courts. *Bounds*, 430 U.S. at 825.

Plaintiff also vaguely asserts that "lockdowns" had something to do with the timely filing of his petition. *Id.* at p. 27. Plaintiff is not specific as to the manner and extent that these lockdowns contributed to his late petition. *Id.* Even so, lockdowns are a normal part of imprisonment designed to preserve order, discipline and security. Even if they infringe upon constitutional rights (which has not been sufficiently alleged by Plaintiff), such infringement is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Plaintiff also asserts that the increase in the cost of copies for inmates limits his ability to file legal documents and pursue legal actions. Doc. 23, p. 27. The CDOC may implement reasonable restrictions to effectuate budgetary concerns and to prevent abuse. *Twyman*, 584 F.2d 352, 358 (10th Cir. 1978). For the same reason, an inmate has no right to free or unlimited photocopies. *Harrell v. Keohane*, 621 F.2d 1059, 1061 (10th Cir. 1980); *Pruitt v. Hess*, 923 P.2d

---

[5] Plaintiff incorrectly asserts a violation of the First Amendment.

325, 327-28 (Colo. App. 1996), *cert. denied* (Colo. 1996).  In addition, an inmate has the same burden to conserve his resources and live within a budget as free citizens have.  *Shabazz v. Parsons*, 127 F.3d 1246, 1249 (10th Cir. 1997).  "To require a prisoner who wishes to prosecute several legal actions simultaneously to have to choose occasionally between stamps and coffee is certainly no more a restriction than that which any indigent pro se non-prisoner must face." *Twyman*, 584 F.2d at 359.  Plaintiff also failed to allege that he sustained any "distinct and palpable" injury resulting from the alleged increase in copying costs.  *Smith*, 899 F.2d at 944.

## VI.  CLAIM SIX FAILS TO STATE AN EIGHTH AMENDMENT FAILURE TO PROTECT CLAIM

In Claim Six, Plaintiff alleges that Defendant Lind ordered that Plaintiff be moved from Unit 1 to Unit 5 at LCF.  Doc. 23, p. 30.  As a result, Plaintiff claims that he was subjected to an increased risk of harm.  *Id.*  Plaintiff also raises failure to protect allegations in Claim One, when he alleged that the termination and/or denial of reentry into the SOTMP subjected him to the risk of transfer to a "harsher" prison and "potential physical assault."  *Id.* at p. 12.  In Claim Four, Plaintiff asserts that his transfer to LCF subjected him to "physical assault for no more reason than the nature of [his] crime."  *Id*. at p. 24.

An inmate has the right to be reasonably protected from constant or pervasive threats of violence.  *Ramos*, 639 F.2d 559, 572 (10th Cir. 1980).  However, in order to state an Eighth Amendment failure to protect claim, the plaintiff must show that, objectively, "he is incarcerated under conditions posing a substantial risk of serious harm," and subjectively, "the prison official was deliberately indifferent to his safety."  *Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006).  Plaintiff essentially argues that, because he is a sex offender, he is inherently in danger of physical harm.  However, nothing in Plaintiff's complaint indicates that he ever faced an

<u>actual</u> risk of serious harm.  In addition, nothing in Plaintiff's Complaint indicates that any of the Defendants knew of and disregarded an actual risk to Plaintiff's health or safety.  *Farmer*, 511 U.S. at 837.  Therefore, Claim Six, as well as any other failure to protect claims, should be dismissed.

### VII.   CLAIM SEVEN FAILS TO STATE A FOURTH AMENDMENT CLAIM

Plaintiff alleges that, because of the mandate issued by Defendant Estep that prisoners are no longer permitted to cover their cell door windows, he has been viewed urinating by female staff members.  Doc. 23, p. 31.  Therefore, Plaintiff claims that he is subject to being written up for exposure.  *Id.*  Plaintiff only alleges that he is at risk for being written up for involuntary exposure, not that this has ever actually occurred, or that he has ever suffered any actual harm.  *Id.*  In any event, prisoners do not have a reasonable expectation of privacy in their cells.  *Hudson v. Palmer*, 468 U.S. 517, 526 (1984).  "'[L]oss of freedom of choice and privacy are inherent incidents of confinement.'"  *Id*. at 528.

Because the management of a prison is so dangerous and difficult, prison administrators should be given deference in adopting practices which are designed to preserve order, discipline and security.  *Ramos*, 639 F.2d at 579.  Accordingly, even if an infringement upon a prisoner's constitutionally-protected interest is demonstrated, the prison's procedure must be upheld if reasonably related to a legitimate penological interest.  *Turner*, 482 U.S. at 89.  Even Plaintiff recognizes the important security issues implicated in his claim, stating that he suggested the use of "nylon or plastic strip that is opaque," which would balance the prisoner's rights with "CDOC's responsibility to provide safety and security in the facility."  Doc. 23, p. 32.

## IV. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY IN THEIR INDIVIDUAL CAPACITIES

Once the defense of qualified immunity is asserted, the burden shifts to the Plaintiff to show that qualified immunity is not appropriate. *Davis v. Scherer*, 468 U.S. 183, 197 (1984); *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001). Plaintiff must specifically demonstrate that: 1) Defendant violated a constitutional right; *Brosseau v. Haugen*, 543 U.S. 194 (2004) citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001), and, 2) the right was clearly established that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Brosseau* citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).[6]

As set forth above, Plaintiff has not established any constitutional violations. Even so, Defendants "may nevertheless be shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). There is no clearly established law supporting Plaintiff's claims, nor has he provided supporting facts indicating that the Defendants "knew or reasonably should have known" that their conduct was illegal. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982).

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Court grant their Motion to Dismiss as to Claims One, Two, Three, Five, Six and Seven.

---

[6] This order of proof or sequence is no longer mandated. *Pearson v. Callahan,* 129 S.Ct. 808, 2009 WL 128768, 9 (U.S.) (decided January 21, 2009). However, this does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases. *Id.* at 13. Thus while "the sequence set forth there [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." *Id.*

Respectfully submitted this 18th day of May 2009.

         JOHN W. SUTHERS
         Attorney General


         s/ Jennifer S. Huss
         JENNIFER S. HUSS, 36176*
         Assistant Attorney General
         Civil Litigation & Employment Law Section
         Attorneys for Defendant

         1525 Sherman Street, 7th Floor
         Denver, Colorado 80203
         Telephone: 303-866-4500
         Facsimile: 303-866-5443
         Email:  jennifer.huss@state.co.us
         *Counsel of Record

## CERTIFICATE OF SERVICE

This is to certify that I have duly served the within MOTION TO DISMISS IN PART upon all parties herein by depositing copies of same in the United States mail, postage prepaid, at Denver, Colorado, this 18th day of May 2009, addressed as follows:

James Conkleton, # 108986  
Sterling Correctional Facility  
P.O. Box 6000  
Sterling, CO 80751-0600

*Courtesy Copies by E-mail to:*  
Cathie Holst, CDOC  
Shawna Roche, SCF

s/ Mariah Cruz-Nanio