IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02612-WYD-MEH

JAMES K. CONKLETON,

      Plaintiff,

v.

ARISTEDES W. ZAVARAS, in his official capacity as Executive Director of the Colorado
Department of Corrections (CDOC),
JOE STOMMEL, in his official capacity as the Program Administrator of the Sex Offender
Treatment and Monitoring Program (SOTMP) for the CDOC,
JOHN P. MCGILL, in his individual and official capacities as Treatment Provider for the SOTMP,
BONNIE CANTU, in her individual and official capacities as Treatment Provider for the SOTMP,
JAMES LANDER, in his individual and official capacities as Treatment Provider for the SOTMP,
ED MURO, in his individual and official capacities as a Correctional Officer I for the CDOC,
RICHARD DEGROOT, in his individual and official capacities as a Case Manager for the CDOC,
CATHIE HOLST, in her official capacity as Manager for the Office of Correctional Legal Services
for the CDOC,
THOMAS MISEL, in his individual and official capacities as Case Manager Supervisor, CDOC,
AL ESTEP, in his official capacity as the Warden of the CDOC's Fremont Correctional Facility, and
RICHARD LIND, in his individual and official capacities as a Correctional Officer V,

      Defendants.

---

## RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS IN PART

---

Pending before the Court is Defendants' Motion to Dismiss in Part [filed May 18, 2009;

docket #54].  Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter is

referred to this Court for recommendation [docket #57].  The motion is fully briefed, and oral

argument would not materially assist the Court in its adjudication.  For the reasons set forth below,

the Court RECOMMENDS Defendants' Motion to Dismiss in Part be **granted in part and denied**

in part.[1]

## BACKGROUND

Plaintiff is a state prisoner incarcerated at the Sterling Correctional Facility in Sterling, Colorado. Plaintiff brings this action pursuant to Section 1983 of 42 U.S.C., asserting violations of the First, Fourth, Eighth, and Fourteenth Amendments. (Docket #23 at 6.) Plaintiff *pro se* initiated this suit on December 2, 2008; following an order by the Court, Plaintiff filed an Amended Complaint on March 2, 2009. (*See* docket #23.) In essence, Plaintiff alleges seven distinct claims that Defendants have denied him access to mandatory sex offender treatment, subjected him to involuntary bodily exposure and retaliatory transfers, denied him reasonable access to the courts and failed to protect him from the risk of assault.

More specifically, the Court construes Plaintiff's claims as follows. Plaintiff's Claim One alleges a violation of the Fourteenth Amendment right to due process, as related to his termination and precluded readmission to the Sex Offender Treatment and Monitoring Program (SOTMP), against Defendants Zavaras and Stommel in their official capacities and Defendants Cantu, McGill, and Landers in their official and individual capacities. (Docket #23 at 11.) Plaintiff seeks injunctive

---

[1]Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

relief against Defendants Zavaras and Stommel and compensatory and punitive damages against Defendants Cantu, McGill, and Landers.  (*Id*. at 35-36.)  Plaintiff's Claim Two alleges Defendants Cantu, McGill, and Landers in their official and individual capacities denied "prescribed" mental health and sex offender treatment for Plaintiff, in violation of the Eighth Amendment. (*Id*. at 14-18.) Plaintiff requests compensatory damages against Defendants Cantu, McGill, and Landers for "mental and emotional injury," and punitive damages.  (*Id*. at 35-36.)  Plaintiff brings his Claim Three pursuant to the First Amendment, and claims Defendant Muro, in his individual and official capacities, retaliated against Plaintiff because Plaintiff assisted other inmates with filing grievances. (*Id*. at 19.)  Plaintiff seeks compensatory and punitive damages against Defendant Muro.  (*Id*. at 36.)

Plaintiff's Claim Four similarly asserts a violation of the First Amendment and alleges Defendants DeGroot and Misel, in their individual and official capacities, transferred Plaintiff to a "significantly harsher" correctional facility, in retaliation for Plaintiff having filed grievances against prison staff.  (*Id*. at 23-24.)  Plaintiff also seeks compensatory and punitive damages against Defendants DeGroot and Misel. (*Id*. at 36.)  Plaintiff's Claim Five again asserts a First Amendment violation, alleging Defendants Holst and Zavaras, in their official capacities, impermissibly limited Plaintiff's access to the courts.  (*Id.* at 26-29.)   Plaintiff does not articulate a request for relief related to his Claim Five.  Plaintiff brings his Claim Six pursuant to the Eighth Amendment, contending Defendant Lind, in his official and individual capacities, failed to protect Plaintiff by moving him to a "more dangerous cellhouse" in the Limon Correctional Facility.  (*Id*. at 30, 36.) Plaintiff requests compensatory and punitive damages against Defendant Lind, for mental and emotional injury.  (*Id*. at 36.)  Finally, Plaintiff's Claim Seven alleges Defendant Estep, in his official capacity, violated the Fourth Amendment right to privacy by barring Plaintiff from covering

his cell door windows with a towel.  (*Id*. at 31-32.)  Plaintiff asks the Court for injunctive relief as to this claim, seeking the discontinuation of the policy precluding covering cell windows with a towel "while using the toilet and dressing."  (*Id*. at 35.)

Before filing his Amended Complaint, Plaintiff filed a Motion for Preliminary Injunction, which was denied by Judge Weinsheink on January 21, 2009.  Judge Weinsheink concluded Plaintiff failed "to allege facts that demonstrate he is facing immediate and irreparable injury."  (Docket #15 at 2.)  Plaintiff filed a Notice of Appeal of the January 21, 2009 order on February 20, 2009.  (Docket #19.)  On June 26, 2009, the Tenth Circuit affirmed the District Court.  (*See* docket #66.)

In response to Plaintiff's Amended Complaint, Defendants filed the present Motion to Dismiss in Part as to Plaintiff's Claims One, Two, Three, Five, Six, and Seven, and Defendants DeGroot and Misel filed an Answer as to Plaintiff's Claim Four.  (Dockets #54, 55.)  Defendants contend sovereign immunity precludes an award of damages against any defendant in his or her official capacity, and the Prison Litigation Reform Act (PLRA) requires a showing of a physical injury in order to claim compensatory damages, which Plaintiff failed to properly allege.  (Docket #54 at 4-5.)  As to Plaintiff's Claim One, Defendants argue the two-year applicable statute of limitations bars the relief requested, Defendants Zavaras and Stommel did not personally participate in the facts asserted, and in any event, the allegations fail to state a due process claim.  Regarding Plaintiff's Claims Two and Six brought pursuant to the Eighth Amendment, Defendants assert Plaintiff fails to meet the requisite standards for deliberate indifference and failure to protect. Defendants allege Plaintiff's Claim Three does not describe a constitutional right as required for a claim of retaliation.  As to Claim Five, Defendants believe such claim should be brought pursuant to the Sixth, not First, Amendment, and Plaintiff's allegations fall short of an access to courts claim.

4

Finally, Defendants argue Plaintiff's Claim Seven is purely speculative and does not describe an invasion of privacy under the Fourth Amendment, as prisoners do not enjoy a reasonable expectation of privacy in their cells.

Plaintiff responds that his claims against the Defendants in their official capacities are not barred to the extent he seeks prospective injunctive or declaratory relief.  He also contends that this and other courts have awarded compensatory damages in PLRA cases and, thus, he may be awarded such damages as well.  Additionally, Plaintiff argues that his claim regarding denial in the SOTMP is not barred by the statute of limitations, which was tolled with the required filing of his administrative grievances.  Further, Plaintiff asserts that Zavares and Stommel are properly named as Defendants and that he has suffered a viable due process claim in the denial of his liberty interest in the SOTMP.  Plaintiff also asserts that his Eighth Amendment claims are adequately stated and that his First Amendment denial of access to courts claim should not be dismissed since the law library is deficient in failing to provide inmates access to other states' laws.  Finally, Plaintiff contends that his privacy claim should survive since "prisoners have the right not to be viewed unnecessarily in the nude or while using the toilet."  Docket #64 at 13.

## STANDARD OF REVIEW

### I.     Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The *Twombly*

evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 1949-51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

## II.    Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims. Further, under a 12(b)(1) motion, "a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.

1995)).  In such an instance, "a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion."  *Stuart*, 271 F.3d at 1225.

## III.     Dismissal of a Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).  A *sua sponte* dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

## <u>ANALYSIS</u>

Although not specifically cited by the Defendants, the Court notes that they raise defenses challenging this Court's jurisdiction over certain claims raised by the Plaintiff.  Specifically,

Defendants claim they enjoy sovereign immunity from Plaintiff's claims against them in their official capacities and qualified immunity from damages for Plaintiff's failure to state constitutional claims.  Thus, although Defendants did not bring their motion pursuant to Fed. R. Civ. P. 12(b)(1), the Court may address any jurisdictional questions *sua sponte* to determine whether subject-matter jurisdiction exists.  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006).

A.   <u>Sovereign Immunity</u>

Claims against state officials in their official capacities are essentially claims against the state entity.  *Ky. v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted).  It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state."  *Hunt v. Bennett,* 17 F.3d 1263, 1267 (10th Cir. 1994). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies.  *Blatchford v. Native Village of Noatak & Circle Village,* 501 U.S. 775, 785-86 (1991); *see also Hunt v. Colorado Dep't of Corr.,* 271 F. App'x 778 (10th Cir. 2008) (CDOC is an agency of the State of Colorado that has not expressly waived its sovereign immunity from Section 1983 claims).  Thus, an official-capacity lawsuit is appropriate only where the claims could be sustained against the entity in its own name. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is seeking prospective enforcement of their federal rights. *See Ex parte*

*Young,* 209 U.S. 123, 159-60 (1908).  But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages. *Buchwald v. University of New Mexico Sch. of Medicine,* 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

Plaintiff concedes that he is precluded from making claims for money damages against the Defendants in their official capacities, but points out that this does not bar suits for prospective injunctive or declaratory relief.  When a private party sues a state entity for prospective injunctive or declaratory relief from an alleged ongoing violation (as opposed to *past* violations) of the Constitution or federal laws, the suit is not considered to be against the state itself, and the Eleventh Amendment does not apply.  *See Ex Parte Young*, 209 U.S. at 159-60; *see also Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1205 (10th Cir. 2002).  To maintain an action for declaratory or injunctive relief, Plaintiff must establish a substantial likelihood of being injured in the future. *Green v. Mansour*, 474 U.S. 64, 69 (1985) (holding that a declaratory judgment that a party violated federal law in the past is barred by the Eleventh Amendment); *see also Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991).

To the extent that Plaintiff seeks monetary damages and other relief for past harms against Defendants in their official capacities,[2] the claims are barred under *Ex Parte Young, supra*, and should be dismissed.  *See also Green*, 474 U.S. at 69.  However, Plaintiff also seeks prospective injunctive and declaratory relief from Defendants Zavaras, Stommel and Estep in the form of a

---

[2]This includes Plaintiff's request for declarations that a Colorado statute and CDOC policy were unconstitutionally applied to him at the time he requested reentry into the SOTMP.  *See Green v. Mansour*, 474 U.S. at 69.

transfer, placement into a SOTMP, and partial privacy in his cell all to prevent alleged future harm.[3] The Court finds that these official-capacity claims are not barred by the Eleventh Amendment.

B.    Qualified Immunity

The Defendants assert that they are entitled to qualified immunity on claims against them in their individual capacities.  Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  It is an entitlement not to stand trial or face the other burdens of litigation.  *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted).  The privilege is an immunity from suit rather than a mere defense to liability.  *Id.* When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity.  *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).  "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity."  *Id.* (citing *Pearson v. Callahan*, – U.S. –, 129 S. Ct. 808, 818 (2009)).

The Supreme Court recently discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second - if the court concluded a right had been violated - whether that right was clearly established at the time of the alleged violation.  *Pearson,* 129 S. Ct. at 816-22.  *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should

---

[3]Of course, to maintain the claims for injunctive relief, Plaintiff must establish a substantial likelihood he will be injured by the Defendants in the future.  *See Facio*, 929 F.2d at 544.  The Court will address this requirement in its analysis of the merits of the claims.

be addressed first in light of the circumstances in the particular case at hand." *Id.*; *see also*

*Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Here, for each claim alleged, the Court examines first whether the Plaintiff has demonstrated

on the facts alleged that the Defendants violated his constitutional or statutory rights. If the Plaintiff

has stated a constitutional violation, the Court will then proceed to determine whether the right was

clearly established at the time of the alleged conduct.

### 1.      Due Process under the Fourteenth Amendment(Claim One)

Defendants assert that Plaintiff's first claim is barred by the statute of limitations.

"Limitations periods in § 1983 suits are to be determined by reference to the appropriate state statute

of limitations and the coordinate tolling rules." *Rosales v. Ortiz*, 325 F. App'x 695, 698 (10th Cir.

2009) (unpublished) (quoting *Hardin v. Straub*, 490 U.S. 536, 539 (1989)). In Colorado, Colo. Rev.

Stat. § 13-80-102(g) "bars suit filed more than two years after the time the cause of action accrued."[4]

*Rosales*, 325 F. App'x at 698. "A § 1983 action 'accrues when facts that would support a cause of

action are or should be apparent.'" *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (quoting

*Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995)).

Here, Plaintiff initiated this action on December 2, 2008;[5] therefore, his claim must have

arisen no earlier than December 2, 2006. According to the Amended Complaint, Plaintiff alleges

that the denial of his"reentry" into the SOTMP in December 2006 violated his due process rights.

----

[4]Colo. Rev. Stat. § 13-80-102(g) establishes a two-year statute of limitations for "all actions upon liability created by a federal statute where no period of limitation is provided in said federal statute."

[5]Defendants incorrectly cite February 25, 2009, the date Plaintiff filed his Amended Complaint, as the date Plaintiff initiated his claim in this case; however, Plaintiff raised the claim in his original Complaint filed December 2, 2008. Docket #3 at 7-12.

Specifically, Plaintiff alleges that he was terminated from the SOTMP in July 2003; then, in September 2006, Plaintiff was approved for transfer to a participating SOTMP facility.  On October 25, 2006, Plaintiff was transferred from Arkansas Valley Correctional Facility to Fremont Correctional Facility.  On November 27, 2006, Plaintiff was notified by Defendant Bonnie Cantu that he must complete a "re-screening" form to be eligible for sex offender treatment.  The next day, Plaintiff met with Defendant Cantu, who informed him that his file was lacking a "probation contract" as required by the SOTMP and that she would need to consult with Defendant John McGill to determine whether he would be granted reentry.  Sometime thereafter, Defendant Cantu informed Plaintiff that he did not pass a "screening" held on December 8, 2006, and had failed to complete the necessary probation paperwork and, thus, was not eligible for reentry into the program.  Plaintiff alleges that, in response to this information, he initiated the administrative grievance process on December 18, 2007; however, a "Step 3" letter attached to the Complaint to which he refers for this claim is dated November 29, 2007.  As such, it is possible that the Amended Complaint contains a typographical error and that Plaintiff filed a grievance on December 18, 2006.

Nevertheless, the Court finds that Plaintiff's claim is not barred by the statute of limitations.  According the allegations in the Complaint, the first time Plaintiff knew or should have known that he was denied reentry into the program was some time after his screening on December 8, 2006, which is within the two-year limitations period.  Therefore, the Court recommends that Defendants' motion to dismiss be denied in this respect.

Defendants contend that, in the alternative, Defendants Zavaras and Stommel did not personally participate in the conduct underlying Plaintiff's claim.  This contention is without merit; the case law surrounding this argument makes clear that a defendant must be sued in his/her

individual capacity to enjoy protection under this argument.  *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976)   However, in this action, the Plaintiff sues Defendants Zavaras and Stommel only in their official capacities. Thus, the Court recommends that Defendants' motion to dismiss be denied in this respect.

Finally, Defendants argue that Plaintiff's claim fails to state a valid due process violation in that Plaintiff has no liberty interest in participating in, or reentering, the SOTMP.  While the Court disagrees with Defendants' assertion that "[t]here is no case in this jurisdiction that recognizes a liberty interest in the ability to reenter the [SOTMP]," the Court agrees that any right alleged by Plaintiff was not clearly established at the time of Defendants' conduct.

In *Beebe v. Heil*, 333 F. Supp. 2d 1011, 1017 (2004), on which the Plaintiff relies, Judge Daniel held that an inmate sentenced under the Colorado Sex Offender Lifetime Supervision Act ("SOLSA") enjoyed a liberty interest in the deprivation of required sex offender treatment and, thus, successfully stated a cognizable due process violation.  Although the plaintiff in *Beebe* was terminated from the SOTMP, this Court sees no distinction between termination from a program and denial of entry into a program - in either instance, the inmate required to undergo treatment is deprived of treatment.

Here, Plaintiff alleges that he was sentenced under the SOLSA and that he was sentenced to "an indeterminate term in the CDOC for a minimum of ten years and a maximum for the remainder of his natural life."  Docket #23 at 4.  Plaintiff states that, consequently, he is required to participate in sex offender treatment.  Therefore, the Court finds that, in this Court, Plaintiff has

stated a cognizable liberty interest in the denial of his "reentry" into the SOTMP.[6]  With respect to

this claim, the Plaintiff alleges that he will be harmed in the future by lifetime incarceration without

the ability to apply for parole if he is not allowed to participate in the SOTMP.  The Court finds that

he has established a substantial likelihood he will be injured by the Defendants in the future.  *See*

*Facio*, 929 F.2d at 544.  Therefore, the Court recommends that the motion to dismiss Plaintiff's

Claim One against Defendants Zavaras and Stommel in their official capacities for prospective

injunctive and declaratory relief be denied.

      However, Defendants Cantu, McGill, and Landers have asserted qualified immunity from

Plaintiff's due process claim; as such, the Plaintiff must demonstrate that his liberty interest was

clearly established at the time of the alleged unlawful activity.  *Riggins*, 572 F.3d at 1107.  A due

process right "is clearly established only if there is 'a Supreme Court or Tenth Circuit decision on

point, or the clearly established weight of authority from other courts has found the law to be as the

plaintiff maintains.'"  *Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000) (quoting *Albright*

*v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995)) (internal quotations omitted).  The *Beebe*

opinion, while determinative in this Court, is neither a Supreme Court nor Tenth Circuit decision.

Additionally, the Court has found no established weight of authority from other courts finding a

liberty interest under these circumstances.  Therefore, the Court finds that Plaintiff's due process

right was not clearly established at the time he was denied reentry into the SOTMP.  The Court

recommends that Defendants' motion to dismiss Plaintiff's Claim One against Defendants Cantu,

McGill, and Landers be granted and the claims be dismissed.

---

    [6]Judge Daniel has determined that this type of claim is brought properly pursuant to 42
U.S.C. § 1983.  *Beebe*, 333 F. Supp. 2d at 1014.

2.      Eighth Amendment (Claims Two and Six)

Plaintiff alleges that Defendants violated the Eighth Amendment by denying him sex offender treatment for a serious medical need and by failing to protect him as a sex offender. Defendants counter that Plaintiff fails to state sufficient facts to demonstrate sex offender treatment was prescribed by a doctor as "medically necessary," and to show that he suffers a substantial risk of serious harm warranting protection.

In a Section 1983 claim, Plaintiff must allege an affirmative link between the Defendants' conduct and any constitutional violation in his Amended Complaint. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1156 (10th Cir. 2001) (citing *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991)).  In order for a prison official to be liable for "deliberate indifference" under Section 1983, "the official must have been personally and directly responsible for the occurrence of the alleged Eighth Amendment violation." *Jenkins v. Denver County Jail*, No. 99-1335, 2000 WL 84893, at *2 (10th Cir. 2000) (unpublished) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)).  "A plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," because the theories of respondeat superior and vicarious liability are inapplicable to Section 1983 suits. *Iqbal*, 129 S. Ct. at 1948.  Such allegations must plausibly state an entitlement to relief, and the Court must infer "more than the mere possibility of misconduct." *Id*. at 1950.

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras,* 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)).  Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and

medical care and . . . tak[e] reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994)). Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney,* 509 U.S. 25, 35 (1993); *see also Estelle,* 429 U.S. at 105.

Plaintiff must meet both the objective and subjective components constituting the test for deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id*. (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006)). To meet the subjective component, a plaintiff must demonstrate defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S. at 838). This component is equivalent to "criminal recklessness, which makes a person liable when she [or he] consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (unpublished) (quoting *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005)).

Here, the Court finds that Plaintiff has failed to state an Eighth Amendment violation in Claim Two. Although he alleges that he was diagnosed with mental deficiencies mandating treatment by a doctor affiliated with the CDOC for purposes of sentencing, he does not claim that

the doctor found such deficiencies related to the sex offenses for which he was charged nor that the doctor determined the sex offender program was medically necessary to treat Plaintiff's deficiencies. Moreover, Plaintiff's conclusory statement that "without prescribed treatment, [his] mental deficiencies will not improve . . .[but] will deteriorate" is nothing more than speculation and fails to demonstrate that he is suffering a sufficiently serious harm.  Because a risk of harm is not substantial here, Plaintiff cannot show that Defendants' disregard of it (if any) violated the Eighth Amendment.

With respect to Claim Six, Plaintiff alleges that on March 24, 2008, nearly a year before he filed the Amended Complaint, he was transferred from Unit 1 to Unit 5 at the Limon Correctional Facility (LCF) and, because he feared for his life and safety as a result of potential threats by other non-sex offender inmates, refused to go, so was placed in segregation.  At the time Plaintiff filed his Amended Complaint, he was housed at the Sterling Correctional Facility.  Plaintiff does not allege that he was harmed or received any threats upon his placement in segregation or move to Unit 5 (if it occurred) at the LCF or any time thereafter until his transfer to Sterling.  Therefore, Plaintiff has failed to allege that he was exposed to conditions posing an unreasonable risk of serious damage to his future health and, thus, does not state a cognizable Eighth Amendment violation.

Because Plaintiff fails to state Eighth Amendment violations against Defendants Cantu, McGill, Landers and Lind, the Court finds that these Defendants are entitled to qualified immunity from Claims Two and Six and recommends that the claims be dismissed.

### 3.     First Amendment Retaliation (Claim Three)

Plaintiff alleges that he suffered retaliation for assisting other inmates with filing administrative grievances.  Defendants respond that there is no constitutional right to assist others

with grievances; therefore, Plaintiff has failed to state a constitutional claim.  The Court agrees.

Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights, including his First Amendment right to petition the government for redress of his grievances. *Fogle v. Pierson*, 435 F.3d 1252, 1263-64 (10th Cir. 2006).  However, it is well established that "an inmate 'does not have a protected interest in providing legal representation to other inmates.'" *Peterson v. Shanks*, 149 F.3d 1140, 1144 (1998) (quoting *Smith v. Maschner*, 899 F.2d 940, 950 (10th Cir. 1990)); *see also Shaw v. Murphy*, 532 U.S. 223, 225 (2001).  Therefore, Plaintiff has failed to state a cognizable First Amendment retaliation claim and the Court finds that Defendant Muro enjoys qualified immunity from this claim.  The Court recommends that Defendants' motion to dismiss Claim Three be granted.

### 4.     First Amendment Access to Courts (Claim Five)

The Plaintiff alleges that he was denied the ability to seek a writ of certiorari from the United States Supreme Court in his underlying criminal case due to the law library's insufficient legal research system, and that he is currently denied access to court due to the excessive copy costs at the CDOC.  Defendants counter that Plaintiff fails to state an actual injury from an allegedly subpar research program since he missed a deadline for which he was responsible and was actually able to conduct  research "by casting a wide net through the vast Westlaw key search digest.  In addition, Defendants argue that any increase in copy costs is reasonably related to a legitimate penological interest.

Prisoners have a fundamental right to access the courts. *Lewis v. Casey,* 518 U.S. 343, 346 (1996).  However, a prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury.  *Id.* at 352-53.  Actual injury occurs when a prisoner

demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id.*

In *Christopher v. Harbury,* 536 U.S. 403, 415 (2002), the Court divided access-to-the courts claims into two categories. *Id.* at 413. The first, termed "forward looking claims," are cases where official action frustrates a plaintiff's ability to bring a suit at the present time. *Jennings v. City of Stillwater*, 383 F.3d 1199, 1208-09 (10th Cir. 2004). The second class, termed "backward looking claims," arise when plaintiffs allege that a specific claim "cannot be tried (or tried with all the evidence) [because past official action] caused the loss or inadequate settlement of a meritorious case." *Id.* at 1209. In this way, the official action is said to have " 'rendered hollow [the plaintiff's] right to seek redress' " in the courts. *Id.* (quoting *Christopher,* 536 U.S. at 415 (brackets in original) (internal citations omitted)). Here, Plaintiff alleges both forward looking and backward looking claims.

With respect to backward looking claims, a prisoner claiming he was denied access to the courts must ultimately prove he suffered an actual injury by showing that the defendant's acts hindered his ability to pursue a nonfrivolous legal claim. Conclusory allegations are not sufficient in this regard. *Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006). The right of access to the courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher*, 536 U.S. at 415.

Prisoners have no freestanding right to a law library or legal assistance; therefore, an inmate cannot establish relevant actual injury simply by showing that his prison's law library is subpar in some theoretical sense. *Lewis*, 518 U.S. at 351.

Here, the Court finds no actual injury where Plaintiff claims that the sole reason he missed

a deadline to file a petition for writ of certiorari to the U.S. Supreme Court for his underlying criminal conviction was his inability to find caselaw in the law library's Westlaw database to support a speculative legal theory.  Plaintiff's claim of "actual injury" is vague and conclusory and, thus, he has failed to allege that a lack of sufficient research tools hindered his ability to pursue a "nonfrivolous" claim.  Therefore, Defendant Holst[7] is entitled to qualified immunity on this claim.

With respect to Plaintiff's forward looking claim alleging that excessive costs have forced him to make a choice between purchasing hygiene items or paying for copies for his lawsuit, the Court finds that Plaintiff has failed to allege that he has been denied access to pursue his claims in this action.  Plaintiff's payment of twenty cents more per page alleges only that Plaintiff's legal pursuit has cost more, but has, in no way, obstructed his litigation activities.  *See, e.g. Stankowski v. Farley*, 487 F. Supp. 2d 543, 557 (M.D. Pa. 2007) (finding no First Amendment claim where prisoner alleged excessive costs caused delays in filing documents in his lawsuit).

The Court finds that Plaintiff has failed to state a First Amendment access to courts claim and, thus, Defendants are entitled to qualified immunity.  The Court recommends that Defendant's motion to dismiss Claim Five be granted.

C.      Failure to State a Claim

In his Claim Seven, Plaintiff alleges that Defendant Estep, in his official capacity, violated Plaintiff's Fourth Amendment right to privacy when he enforced a rule that denies prisoners temporary privacy while dressing or using the toilet.  Defendants respond that even if such rule infringes upon Plaintiff's constitutional right, the rule and procedure must be upheld as reasonably

---

[7]Plaintiff also names Defendant Zavaras in this claim, but does so in his capacity as "supervisor" over the law library.  However, Section 1983 does not provide for liability under the theory of *respondeat superior.  See Worrell v. Henry,* 219 F.3d 1197, 1214 (10th Cir. 2000).

related to a legitimate penological interest.

At the outset, the Court notes that Plaintiff seeks prospective injunctive relief for future harm from Defendant Estep, Warden for the Fremont Correctional Facility.  However, Plaintiff has not been housed at Fremont Correctional Facility since September 25, 2007.  Docket #23 at ¶ 81.  While Plaintiff alleges generally that he is suffering the same violation at his current location, Sterling Correctional Facility, he names no official responsible for the violation as a defendant in this action.[8] Therefore, it is likely Plaintiff has no standing to bring this claim.  *See Stewart v. Kempthorne*, 554 F.3d 1245, 1253 (10th Cir. 2009) (to satisfy the injury-in-fact prong of a standing inquiry, a plaintiff must show an invasion of a legally protected interest which is concrete and particularized, and actual or imminent).

Nevertheless, even if the Plaintiff could demonstrate standing to bring his Fourth Amendment claim, the Court finds that he has failed to state the claim pursuant to Fed. R. Civ. P. 12(b)(6).  The Fourth Amendment does not establish a right to privacy in prisoners' cells, but prisoners do retain a limited constitutional right to bodily privacy, particularly as to searches viewed or conducted by members of the opposite sex.  *Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir. 1995).  As such, an inmate's constitutional rights may be violated when guards of the opposite sex regularly observe the inmate engaged in personal activities, such as dressing, showering and using the toilet.  *See Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir. 1982).  However, prisoners' constitutional claims must be analyzed with due regard for the requirements of prison

---

[8]Plaintiff identifies Defendant Zavaras only in his request for relief for this claim; however there are no allegations of Mr. Zavaras' participation, if any, in the claimed violation.  *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) ("personal participation is an essential allegation in a § 1983 action").

administration; thus, courts must give great deference to prison officials' decisions concerning the management of correctional facilities.  *Id.*

With respect to Plaintiff's claim, "the frequency with which prison guards watch inmates of the opposite sex undressing, using toilet facilities and showering 'is an important factor in assessing the constitutionality of prison practices.'"  *Moore v. Atherton*, 28 F. App'x 803, 806 (10th Cir. 2001) (unpublished) (quoting *Hayes*, 70 F.3d at 1147).   Again, while Plaintiff alleges that his privacy rights have been violated both at FCF (Fremont Correctional Facility, where he was formerly housed) and at SCF (Sterling Correctional Facility, where he is currently housed), he brings this claim only against Defendant Estep, the FCF Warden.   Therefore, with respect to FCF, Plaintiff alleges that he "has been viewed numerous times while using the toilet or dressing by female staff," explaining that "if a female guard is assigned to walk the tier, it is not uncommon for Plaintiff to be involuntarily exposed two or more times by that female in one shift."   However, according to Plaintiff's allegations, notice regarding the rule was issued "in August or September of 2007" and Plaintiff was transferred from FCF on September 25, 2007.   Thus, the Court finds that viewing by a female officer who may be assigned to a shift within a three- to seven-week period does not constitute sufficient frequency to rise to the level of a Fourth Amendment violation.   *See, e.g., Grummett v. Rushen*, 779 F.2d 491, 494-95 (9th Cir. 1985) (female guards working the tiers and walking past cells occasionally did not violate inmates' privacy rights); *see also Timm v. Gunter*, 917 F.2d 1093, 1102 (8th Cir. 1990) (same).

The Court recommends that Defendants' motion to dismiss Claim Seven be granted.

## CONCLUSION

Here, Plaintiff has stated a cognizable claim for prospective injunctive and declaratory relief

against Defendants Zavaras and Stommel with respect to Claim One; however, the Court finds that

the remainder of Claim One and Claims Two, Three, Five, Six and Seven should be dismissed.

Accordingly, the Court RECOMMENDS that Defendants' Motion to Dismiss in Part [filed May 18,

2009; docket #54] be **GRANTED IN PART AND DENIED IN PART** as set forth herein.

Dated at Denver, Colorado, this 1st day of October, 2009.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

23